[No. 34804. Department One. March 19, 1959.]

RUTH DODD MOLLETT, *Respondent*, v. THE CITY OF TACOMA *et al.*, *Appellants.*[1]

[1]Reported in 337 P. (2d) 48.

*Marshall McCormick, Robert R. Hamilton,* and *Allan R. Billett,* for appellant.

*E. K. Murray* and *E. M. Murray,* for respondent.

OTT, J.—September 8, 1950, Ruth Dodd Mollett voluntarily resigned her employment with the city of Tacoma. She had been a member of the Tacoma retirement system nine years, eight months, and eight days, and had paid into the retirement fund the sum of $1,847.24, which was refunded to her upon her resignation, as provided by the pension ordinance.

In 1955, Mrs. Mollett made application to the city for employment, "In order to establish [her] pension rights." Because of problems involving civil service eligibility lists, she was notified in writing that her application for employment had been accepted on a temporary basis and that she would be employed by the city for a term commencing September 7, 1955, and terminating December 9, 1955. Later, she was given written notice of, and she accepted, further

limited term employment appointments, as follows: from December 12, 1955, to March 9, 1956; from March 10, 1956, to September 9, 1956; and from September 10, 1956, to October 31, 1956.

Mrs. Mollett redeposited in the retirement fund, as authorized by the ordinance, the amount of her former withdrawal, $1,847.24, and during the four limited term employment periods, pension deductions were made from her salary and deposited in the pension fund.

Subsequent to October 31, 1956, the termination date of her last limited term appointment, Mrs. Mollett was notified that she had been granted a normal pension in the sum of $40.91 a month, in conformity with the voluntary retirement provisions, §§ 13(b) and 14(a), of ordinance No. 14039, as amended.

Mrs. Mollett instituted this action against the city of Tacoma and the pension board for an increased pension, contending that she was *involuntarily separated* from her employment and that she was entitled to a minimum pension of eighty-five dollars a month, as provided by § 14(c) of ordinance No. 14039, as amended.

From a judgment sustaining her contention, the city and the pension board have appealed. The city will be referred to herein as though it were the sole appellant.

The appeal presents a single query: Was respondent's retirement accomplished by an involuntary separation from city service employment?

Section 14 (c) of ordinance No. 14039, as amended, is in part as follows:

"Any member who entered the Retirement System on January 1, 1941, . . . *who shall have been or shall be retired by reason of an involuntary permanent separation* from city service, and . . . has reached the age of fifty-seven (57) years and has to his credit at least ten (10) years of creditable service, shall receive . . . not less than $85.00 per month. . . ." (Italics ours.)

Webster's International Dictionary defines "involuntary" as "Not proceeding from choice; done, given, etc., unwillingly or under compulsion; . . ."

Section 13(b), as amended, provides:

"Any member in the city service may retire by filing with the Board a written application stating when he desires to be retired, such application to be made at least thirty (30) days prior to date of retirement: Provided, however, that said member, at the time specified for his retirement, shall have completed ten (10) years of city service as defined in this ordinance and shall have attained the age of fifty-seven (57) years . . ."

 The respondent had the burden of proof to establish that her employment with the city was terminated by an *involuntary* separation.

The facts are not seriously in dispute. The evidence adduced by respondent was that she was fifty-seven years of age when re-hired by the city and fifty-eight when separated from city service; that her separation from city service was involuntary, because she desired to work longer and was able to work; and that the city failed to give her employment after October 31, 1956.

The evidence adduced by the appellant city was that:

(1) Respondent sought employment with the city mainly for the purpose of establishing her right to a pension.

(2) To qualify for a pension under the ordinance, it was necessary that she be reinstated as an employee of the city for a term of at least three months and twenty-two days.

(3) The city was under no legal obligation to give her further employment so that she might qualify for a pension.

(4) She voluntarily accepted reemployment on the city's terms and was aware that she was not entitled to any further employment after the terminal date of each term.

(5) Witnesses for appellant, Gordon Tatum and Ethel Welch, stated that Mrs. Mollett accepted the employment for the terms March 10th to September 9th, and September 10th to October 31st, for two reasons: (a) She needed the additional eight months' work to repay the amount she had been required to redeposit in the retirement fund to qualify for a pension; (b) the last term was shorter than the others for the reason that her husband was retiring from city service on October 31, 1956, and she desired to retire simultane-

ously with him. The respondent offered no rebuttal evidence to these contentions, except to say that she never requested retirement.

(6) October 4, 1956, the respondent and her husband appeared at the pension office and made voluntary written application for retirement, as provided by the ordinance. There is some conflict in the evidence as to whether or not some of the blank spaces in the application of respondent were filled in before or after she signed the instrument before a notary. Her written application for retirement was not withdrawn, either before or after October 31, 1956.

(7) She participated in the social activities furnished by her fellow employees in recognition of the simultaneous retirement of respondent and her husband.

■ ■ The fact that respondent was ready, able, and willing to work did not obligate the city to employ her beyond the termination day of the contract of her employment. The employment contract specified the period of its duration; it terminated by the operation of time alone. 12 Am. Jur. 860, § 305. It follows that, when a prospective employee accepts an employment contract containing a fixed terminal date and the employer offers no further employment beyond the terminal date, the employee cannot be heard to say, when the terminal date arrives, that the severance from his employment was involuntary or that his employer has breached the termination provisions of the contract.

In the instant case, the city was under no legal obligation to permit respondent to become eligible for retirement. She voluntarily assented to the conditions upon which the city was willing to permit her to earn a retirement pension. The minds of the parties met on the question of termination. Respondent fully understood that she would voluntarily leave the city service upon the agreed fixed termination date. She was not overreached, defrauded, or misled by being permitted to qualify for normal retirement upon the city's terms.

■ Respondent failed to prove by a preponderance of the evidence that she was involuntarily separated from her

employment by the city, as contemplated by § 14(c) of the ordinance. We conclude that the evidence preponderates against the trial court's finding that respondent was involuntarily separated from city service, and against the conclusion of law based thereon that she is entitled to a pension allowance as provided by § 14(c) of the ordinance.

Since the complaint prayed only for judgment against the city in the amount in excess of $40.97, the judgment is reversed, with instructions to dismiss the action.

WEAVER, C. J., MALLERY, and DONWORTH, JJ., concur.

HUNTER, J., dissents.

June 11, 1959. Petition for rehearing denied.